Mr. Sandberg. Good morning, your honors. Craig Sandberg on behalf of the appellant. May it please the court, counsel. This case is about whether or not Ski Enterprise Corporation of Wisconsin has sufficient minimum context in the state of Illinois for which the district court to be able to exercise personal jurisdiction over it. So here's my issue with this position. I think there's no doubt that you have waived any theory that there might be what's commonly called specific jurisdiction. So it may have merit, it may not, but it's off the table. After the Supreme Court's Daimler decision of last term, I am having trouble imagining how you could support general jurisdiction against the Ski Enterprise Company in Illinois. I see no way in which you could say that it's effectively, quote, at home, close quote, which is the test that Justice Ginsburg articulated there. Right, well the fact that Ski Enterprise happens to be incorporated in Wisconsin and that its principal place of business is in Wisconsin doesn't preclude the possibility that a corporation may have a home in another location and I think... But the court in the Daimler case, I think makes it very clear that its concept of that is extremely narrow. So there's the old World War II era case, Perkins against Banquet Mining Company, where the Philippines was at war and so they had relocated in Ohio and the court was willing to say, well this is kind of your substitute home. We're gonna say there's general jurisdiction over you here. And they cite Perkins in Daimler, but they have moved away from the old, quote, continuous and systematic business that would be a test that would allow any state to exercise jurisdiction over McDonald's, for example. They do continuous and systematic business everywhere and I don't see why the fundamental theory that you have is really just a specific jurisdiction theory that they target the Chicago market, they'd like people from Chicago to go up there and snowboard and ski and they do other things, but I just don't see how it fits Daimler. The reason why the issue of the specific jurisdiction wasn't addressed was because in the context of Mr. Kipp and his relationship with Ski Enterprise, there wasn't this this conduit directly from one to the other to establish... Right, so in that case you're suing Wisconsin. I mean, you know, you don't have to sue in Illinois. Oh, I agree. They have courts, I'm told, in Wisconsin. Certainly, but the fact that they can be sued in Wisconsin doesn't mean that Illinois doesn't have personal jurisdiction over them. And I believe that the evidence that was brought out by the testimony of their corporate representative demonstrates that they feel entirely at home in the state of Illinois. You can't order a Lyft ticket on the website, can you? That's correct, that's correct. So that's why in the context of the specific jurisdiction that wasn't the way that we approached getting personal jurisdiction or demonstrating to the district court the jurisdiction. And I don't think I'm accusing you of doing something irresponsible there. I mean, that was probably, you know, very well may have been the right call. It's just that the fact that you can't get specific jurisdiction in Illinois doesn't necessarily translate to the fact that the kinds of business contacts that Ski Enterprise had with the state of Illinois are enough for an unrelated suit, for a suit that arises out of something that it did not do in Illinois, something that has nothing to do with Illinois. It could have been Hawaii, you know, it could have been any place. And maybe I'm reading the court too strictly, but I'm reading the court as saying we don't want general jurisdiction to be used very much beyond place of incorporation and principal place of business. Maybe if there's a third place, you know, remember there used to be a test about what was the principal place of business, you know, was the nerve center was where most of the business was done, you know, in Boeing. Is it in Washington or is it in Chicago? Well, maybe it's all three for general jurisdiction, but I can't see where Ski Enterprise comes in here. Well, in what Ski Enterprise has done specifically and why we believe that Illinois has personal jurisdiction over them in the context of a general jurisdiction, their corporate representative talks about all the efforts that they have poured into getting business from Illinois residents and that has borne the fruit that constitutes 60 to 70 percent of their entire business. So let me ask you this, suppose some person in Kentucky went on the website of Ski Enterprise company and they, you know, sell, which I think you can do, and they have a lot of communications and it's all fraudulent. So they want to bring a consumer fraud case against Ski Enterprise. Can they do it in Illinois? Sure, even though because we're talking about the general jurisdiction. Right, that has to be your answer. It seems pushing it to me to say that a Kentucky-Wisconsin relationship like that can be brought in an Illinois court, but at least you're consistent, so that's good. Well, right, it seems counterintuitive for Ski Enterprise to believe that they can get overwhelmingly their business from the state of Illinois. And yet to argue in that same context to say that that offends the ideas of due process, because they shouldn't feel that they could be compelled to defend themselves in this state. They specifically target by coming to the fair, by calling things the Chicagoland Express, and although you can't buy the ticket for the bus to go to the ski resort through that Chicagoland Express, it doesn't mean that they're not at home, that they're not doing anything and everything that they can to avail themselves for Illinois business and business contacts. And so the idea that with all these efforts, and despite the fact that only 15%, 25% of their business comes from someplace other than Illinois, to say that Illinois can't be a home as well as Wisconsin. And I don't think that there probably is any other state other than Wisconsin and based on the testimony of their own representative, it doesn't seem that anything other than the vast overwhelming majority of their business from Illinois and then their principal place of business where the ski resorts at and where they're incorporated could ever serve that home base. So it really falls specifically on the facts of this case. I know that there were a lot of cases that were cited in the brief regarding other resorts and other ski things, and in this case, the state of Illinois can be sued, has personal jurisdiction here in the state of Illinois. We're not suggesting that we're plowing new fields in the area of law, it's just the district court, we believe, erred in its application of the facts that are unrebutted to the law as it relates to personal jurisdiction, specifically general jurisdiction. So any other questions I'll sit down. Thanks. You can save a little time for rebuttal. Please plunk it. Good morning. May it please the court, counsel, Heather Plunkett on behalf of the Apelli Ski Enterprise Corporation of Wisconsin. As this court knows, Ski Enterprise is a ski area operator in Merrimack, Wisconsin. As this court pointed out, the evidence shows that Ski Enterprise is not entirely at home in Illinois. So what do you think the court meant in Daimler when it said at home? Was that just a shorthand for place of incorporation or principal place of business, or is it intended to be a somewhat more flexible and factually based test? I would think to be at home would put it on the same level of the states where it is incorporated or where it is doing business. But Perkins wasn't incorporated or principal place of business, and the court reaffirms the result in Perkins. But I think it would have, the comfort level or the operations in Illinois for Ski Enterprise would have to rise to the same level as they are in Wisconsin. Here that isn't true. The crux of Kip's argument is based on this percentage or this volume of sales. And first of all, that argument is unsupported by the record. Mr. Vittingal, the general manager of Ski Enterprise, testified in his deposition that Ski Enterprise only sells lift tickets as point of sales purchases. You walk up to a counter, you hand cash or a credit card, and you receive a lift ticket. There is no record of who purchases lift tickets, whether it be names, addresses, phone numbers, nothing. Well, the credit card records would certainly provide a huge record. There is no record that Ski Enterprise keeps regarding the state of residence for people who purchase lift tickets. And so, in continuing, Mr. Sandberg asked Mr. Vittingal whether- The name plus the credit card number could easily be traced. Correct, but it is not part of the record. As far as the percentage that Kip relies on, the 60 to 75 percent, that percentage was testified by Mr. Vittingal regarding a completely different entity, Devil's Head Area Recreation Company. Area Recreation is a company that runs the hotel, conference center, and golf courses at Devil's Head Resort. It is a separate Wisconsin entity, and it is not related with Ski Enterprise. But don't they- isn't the information about both of them on the website? And doesn't- when they visit the- when the ski lift area visits the ski show, isn't it in conjunction with the resort? Correct. It is a commingled website, where on the website you can- the times that the ski slopes are open. And doesn't the website say it's run by Ski Enterprise? The website across the bottom does say Ski Enterprise Corporation, correct. Right, runs it. Runs the website. However- So the hotel bookings are a pretty good surrogate, actually, for who's going to ski. I would argue they're not, actually, because- well, first of all, the hotel operates 12 months a year. It has a conference center, and it has golf courses. Skiing is probably a three- to five-month season at best. Additionally, as far as who's going skiing, people who come from Illinois to go skiing are more likely to stay overnight because of the fact that it's a three- to four-hour drive. People who live in Merrimack, Wisconsin, or, you know, within an hour or two of there, are very likely to go for a day, buy a lift ticket, ski for the day, and drive home. However, it would be harder for an Illinois resident to do that. So I would argue that this percentage in the record would not directly correlate to the amount of ski lift tickets that are sold. Also, I think the district court was correct in finding that, really, this percentage wasn't even reliable. Mr. Vittingal said multiple times in his deposition that it was a guess, that it was without any certainty. It was the best he could come up with for the 25 years that he worked there. But, really, the district court pointed out that it was unreliable, and there was no certainty with regard to this percentage. Additionally, the other points that were brought up regarding the trade show or the Chicagoland Express, neither of those rise to the level of doing business or being at home in Illinois. Both of those have been found by the cases that were cited in the briefs, specifically the ski resort cases, to be mere solicitation or advertisement in Illinois. Nothing more than that. This is much more than, quote, mere solicitation. This is targeting a particular market, and we have used the concept of targeting a market extensively, especially in the Internet cases. I'm thinking of cases like mobile anesthesiologists, where we're saying, if you are really tailoring your product to people who live in a particular state, that's a good indication that you've gone beyond stream of commerce, you've gone beyond solicitation. I will say those are all specific jurisdiction concepts, so I'm not sure they help a huge amount with general jurisdiction. But there is, I think, much more than just solicitation going on. Well, I think that is a good point. For there to be general personal jurisdiction, it is a considerably more stringent burden, and I don't believe that the naming is targeting the state of Illinois. It's simply a name of a package. It does not include transportation. It has never included transportation, and it's available for anybody in the world to purchase. Anybody who wants to stay at Devil's Head Resort and buy the Chicagoland Express package can do so. It's not limited to Chicagoland residents or consumers. Additionally, with regard to the trade show, I think the ski resort cases are very clear that attending one trade show in a state is mere solicitation or advertisement and nothing more. Ski lift tickets are not sold there. In a specific jurisdiction case, and somebody had, let's suppose Ski Enterprise was selling timeshares up in the Merrimack area, and there was something questionable about that, I don't have any doubt that coming down voluntarily to Illinois to interact with Illinois consumers for the purpose of buying timeshares would support jurisdiction in Illinois arising out of that activity. Correct, if it arose out of that activity and if specific jurisdiction was being discussed today. However, as the court has pointed out, KIPP is not contending that specific jurisdiction applies, and that's because Mr. KIPP left his home in Illinois, drove to Wisconsin, purchased a lift ticket there, skied there, and was allegedly injured there. Nothing about this case involves the state of Illinois. If the court has no further questions, we'll rest on our briefs. No, apparently not, so thank you very much. Anything further, Mr. Sandberg? Judge, I don't have anything else unless the court has some questions. No, thank you very much to both counsel. We will take the case under advisement.